THAYER v. DEPARTMENT OF AGRICULTURE.

1. FOOD—MILK CHOCOLATE DRINKS—BUTTERFAT CONTENT—STATUTES.
   Statute regulating the production, handling, sale and disposition of milk, cream and other dairy products *held*, to clearly prohibit the sale of any milk chocolate drink with less than 3 per cent. butterfat content (1 Comp. Laws 1929, § 5311, as amended by Act No. 249, Pub. Acts 1947).

2. SAME—MILK—POLICE POWER—PUBLIC HEALTH—PUBLIC WELFARE.
   Under the police power, the State may regulate the production, sale and distribution of milk, cream, and other dairy products as the protection of the public health is involved, milk being a necessary article of food and the public welfare served by measures reasonably designed to encourage its production and sale for consumption (1 Comp. Laws 1929, § 5311, as amended by Act No. 249, Pub. Acts 1947).

3. CONSTITUTIONAL LAW—PRESUMPTIONS—STATUTES.
   Acts of a State legislature are to be presumed constitutional until the contrary is shown and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason.

4. SAME—PRESUMPTIONS—STATUTES—COURTS.
   In case of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act as the power to declare laws unconstitutional should be exercised with extreme caution.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5, 8] 12 Am. Jur., Constitutional Law, § 511; 22 Am. Jur., Food, §§ 57–60, 63.

[1, 2, 5, 8] Constitutionality of regulations as to milk.   18 A.L.R. 235, supplemented in 42 A.L.R. 556, 58 A.L.R. 672, 80 A.L.R. 1225, 101 A.L.R. 64, 110 A.L.R. 644, 119 A.L.R. 243 and 155 A.L.R. 1383.

[1, 2, 5, 8] Validity, construction, and application of statutes or ordinances relating specifically to ice cream or other frozen milk products.   111 A.L.R. 112.

[3, 4] 11 Am. Jur., Constitutional Law, §§ 91, 92, 96, 97, 128.

[3, 4] Validity and effect of provisions limiting the power of courts to declare a statute unconstitutional.   15 A.L.R. 331.

[6] 11 Am. Jur., Constitutional Law, § 291.

[9] 14 Am. Jur., Costs, § 91.

5. SAME—POLICE POWER—REGULATION OF PRODUCTION AND SALE OF MILK.

The legislature has power to regulate the production and sale of milk and its derivatives but the regulations must be reasonable and are limited by the due process clauses of the State and Federal Constitutions.

6. SAME—RIGHT TO ENGAGE IN BUSINESS—POLICE POWER—REGULATION—PROHIBITION.

While the right to engage in any business is subject to the police power of regulation, such power does not extend to the absolute prohibition of trade in useful and harmless articles of commerce.

7. SAME—POLICE POWER—LEGISLATURE.

The primary determination of public need and character of remedy in the exercise of police power is in the legislature.

8. FOOD—MILK CHOCOLATE DRINKS—BUTTERFAT CONTENT—POLICE POWER—FRAUD.

Statute requiring that milk chocolate drinks contain at least 3 per cent. butterfat, the same minimum of butterfat as other milk products, was a valid police regulation in view of the very great probability of fraud upon the public generally arising from manner of packaging and sale (1 Comp. Laws 1929, § 5311, as amended by Act No. 249, Pub. Acts 1947).

9. COSTS—PUBLIC QUESTION—CONSTITUTIONAL LAW—MILK CHOCOLATE DRINKS.

No costs are allowed in suit to declare a statute regulating production and sale of milk chocolate drinks unconstitutional, a public question being involved (1 Comp. Laws 1929, § 5311, as amended by Act No. 249, Pub. Acts 1947).

Appeal from Midland; DesJardins (George W.), J., presiding. Submitted October 7, 1948. (Docket No. 52, Calendar No. 44,184.) Decided January 3, 1949. Rehearing denied February 28, 1949.

Bill by Lance Thayer, doing business as Thayer Dairy, and others against Michigan Department of Agriculture and others for declaration of rights and decree that Act No. 249, Pub. Acts 1947 is unconstitutional insofar as it prohibits sale of chocolate drink products. Decree for plaintiffs. Defendants appeal. Reversed and decree entered dismissing bill.

*Harold H. Bobier* and *Guy W. Selby,* for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendants.

BUTZEL, J.   Plaintiffs, operators of dairies, filed a petition entitled bill of complaint for declaration of rights and for an injunction against the enforcement of Act No. 249, Pub. Acts 1947* (Stat. Ann. 1947 Cum. Supp. §§ 12.601, 12.605, 12.609, 12.612), and particularly section 5 (t) of the act, by the Michigan department of agriculture, its director and other employees and agents, defendants.   The act in question amends sections 1, 5 of Act No. 169, Pub. Acts 1929, as amended, providing for the regulation of dairy products.   Pertinent parts of the act, as far as the instant case is concerned, are as follows:

"SECTION 1.   The provisions of this act shall apply to all dairy products defined in this act, and the purpose of the act is declared to be to secure the wholesomeness and purity of and prevent fraud and deception in the production, handling, sale and disposition of such products.   For the purpose of this act the following definitions shall apply:

"(a) Milk is the whole, fresh, clean, lacteal secretion obtained by the complete milking of 1 or more healthy cows, properly fed and kept, excluding that obtained within 15 days before and 5 days after calving or such longer period as may be necessary to render the milk practically colostrum free. * * *

"(h) Skimmed milk is milk from which substantially all the milk fat has been removed. * * *

"SEC. 5.   No person, firm, association or corporation shall sell to the retail trade, expose for sale, deliver or have in his or its possession with intent

---

* This act amended Act No. 169, §§ 1, 5, 9, 11, Pub. Acts 1929 (1 Comp. Laws 1929, §§ 5307, 5311, 5315, 5317).   As amended, see 2 Comp. Laws 1948, §§ 288.1, 288.5, 288.9, 288.11.—REPORTER.

to sell, for direct consumption or sell, expose for sale or deliver to a processing plant for resale for direct consumption any: * * *

"(e)  Milk which has had the 'cream line' increased by any artificial means or contains less butterfat than 3 per cent.; * * *

"(o)  Flavored milk not made by adding a wholesome flavoring material to milk and not properly labelled to indicate its true flavor; * * *

"(t)  Milk or milk product of any type or kind containing chocolate or cocoa unless such milk or milk product has a butterfat content of not less than 3 per cent."

Plaintiffs allege that they market a wholesome beverage made by the combination of milk or skimmed milk, with a low butterfat content, with chocolate so as to give it a chocolate flavor. The beverage is marketed not as chocolate milk but as "chocolate drink" and other names. We shall refer to it as "chocolate drink," instead of chocolate milk. Plaintiffs contend that the act when applied so as to forbid the sale of the chocolate drink with a butterfat content of less than 3 per cent. is arbitrary and violates article 2, § 16, of the Constitution of Michigan, in that it interferes with plaintiffs' right to do business, without due process of law.

Defendants do not claim that there is anything deleterious or harmful in this chocolate drink. In many respects it appears to be a nutritious food product and far superior to many of the soft drinks on the market. However, the State analyst's report shows that the chocolate drink as sold by the various dairies varies from .37 per cent. to 3.9 per cent. in butterfat.

Defendants show that section 5 of the act, *supra*, establishes a reasonable and necessary standard to protect the public; that only the butterfat of milk contains vitamin "A," recognized as a very impor-

tant and essential part of the daily dietary needs of the public and especially children; that the amount of vitamin "A" in the milk varies directly with the butterfat content; that the chocolate drink is often sold as chocolate milk which must have a minimum butterfat content of 3 per cent. and that large quantities of the chocolate drink are sold in school lunchrooms; that the chocolate drink is sold in standard milk bottles which are often embossed with the name of the dairy and frequently advertised with dairy products. The testimony shows that the drink is often offered for sale, sold or mistaken for chocolate milk and is kept with the other milk products by dealers; that the general public does not, as a rule, differentiate between chocolate drink and chocolate milk, and, as a rule, the main label showing the difference is on the bottle cap. Similarity of the containers to other milk drinks is clearly shown by the exhibits as well as by photographs of such exhibits furnished in appellants' reply brief for the convenience of this Court. Appellees concede that the product is sold in standard milk bottles or containers, the same as other milk products.

The record shows that a quart of milk with 3 per cent. butterfat contains from 1,300 to 1,400 units of vitamin "A"; with only 2 per cent. butterfat, it contains from 700 to 800 units of vitamin "A"; and with 1 per cent. butterfat, about 350 to 400 units of vitamin "A"; that an adult would require 5,000 such units daily and a child of six years of age about 2,000 units. Milk is a most nutritious, wholesome and necessary article of food for children. Milk when the butterfat is extracted or reduced to a minimum is virtually skimmed milk which is difficult to dispose of. It is profitable for the dairy operators to take milk from which a large proportion of the butterfat has been extracted and flavor it with chocolate or other flavoring substances and thus sell it.

Children in particular, and frequently grownups, are very fond of sweetened chocolate drink and apt to buy it instead of much more wholesome pure milk or chocolate milk with at least a 3 per cent. butterfat content. There is a good reason for the enactment of the law as a protection to the public.

The trial judge from the testimony found that vitamin "A" was a definite substance in certain foods, and that the lack of it hinders growth and produces generally a condition of poor health; that it is particularly desirable in the growth and development of children; that the deception or the possibility of deception could be prevented by proper packaging and labeling; that chocolate drink was a much superior beverage to those soft drinks now so readily procurable that contain no milk. The testimony of one of the plaintiffs' experts was to the effect that he could not tell the difference between a chocolate drink that contained less than 3 per cent. and one that contained more; that he doubted whether one could tell by taste whether it contained 2 or 3 per cent.; that one could not enter a cafeteria and tell the difference between a chocolate drink that contained 2 per cent. from one with a 3 per cent. butterfat content except by the label. We can readily see how the public in general and school children in particular would be unable to tell the difference if an expert can not do it. Plaintiffs, however, stated that the difference is shown by the bottle cap and in some cases by the label, or by both. We do not believe that young children would be apt to pay much, if any, attention to such bottle cap or label when the chocolate drink is sold alongside of regular milk or chocolate milk

The trial judge in upholding plaintiffs' claim that the portions of the act assailed are unconstitutional, largely based his decision on the case of *Carolene Products Co.* v. *Thomson,* 276 Mich. 172, hereinafter

discussed.   Defendants have appealed from a decree in favor of plaintiffs.

There are only two questions in the case that require discussion.  Does the act apply to a chocolate drink or set a standard for a chocolate drink?   Is the act a proper exercise of the police power, or is it unreasonable and arbitrary so as to violate the due process clause of the State Constitution?

Plaintiffs contend that the act does not apply to chocolate drink and that it does not set a standard for chocolate drinks.   While it is true that the act does not specifically define chocolate drink, as the prior acts did, the wording of section 5 (t) of the act distinctly shows that its evident purpose was to include chocolate drinks in the standard set.   It states:

"Milk or milk products of any type or kind containing chocolate or cocoa unless such milk or milk product has a butterfat content of not less than 3 per cent."

Clearly the chocolate drink is a milk product even though plaintiffs do not remove as much butterfat in producing it as they do in processing skimmed milk.   It is a distinction of form and not of substance to differentiate between chocolate milk and chocolate drink as they are essentially the same except for the butterfat content for which a standard is set by the act.   The act clearly and specifically prohibits the sale of any milk chocolate drink with less than 3 per cent. butterfat.

The act was recently before this Court in the case of *Johnson* v. *Commissioner of Agriculture,* 314 Mich. 548, 557, where it was thoroughly discussed, many citations and authorities given and the constitutionality of the act was upheld as a valid exercise of the police powers of the State.   In a very careful and thorough opinion, it was stated:

"Under the police power, the State may regulate the production, sale and distribution of milk, cream, and other dairy products. The protection of the public health is involved. Milk is a necessary article of food and the public welfare is served by measures reasonably designed to encourage production and sale for consumption."

In that case we also quoted from *Sears* v. *Cottrell*, 5 Mich. 251, as follows:

"No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a State legislature are to be presumed constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.

"The power of declaring laws unconstitutional should be exercised with extreme caution, and never where serious doubt exists as to the conflict."

The power of the State to regulate the production and sale of milk has been universally upheld and the scope of power has been held to be very large as shown by the many cases from other States cited in 18 A. L. R. 240, annotation on the constitutionality of regulation as to milk standards. Many additional cases are cited in 42 A. L. R. 557; 58 A. L. R. 672; 80 A. L. R. 1226; 101 A. L. R. 67; 110 A. L. R. 647; 119 A. L. R. 246; and 155 A. L. R. 1396. The early cases placed practically no restrictions on the power of the legislature in this field of regulation. However, in recent cases the courts have held that the regulations must be reasonable and are limited by the due process clause of the State and National Constitutions. One of the first cases to recognize this principle was the *Carolene Case* decided by the

Michigan Court and relied on by the court below and cited in the briefs of both parties in support of their arguments. *Carolene Products Co.* v. *Thomson, supra.* This case involved the statute in 1 Comp. Laws 1929, § 5358, which provided that it was unlawful for any person to manufacture or sell milk in any form to which had been added any fats or oils other than butterfat. The plaintiffs manufactured a product made of condensed skimmed milk to which was added cocoanut oil. This was sold in tin containers, the size of evaporated milk cans, and labelled with the name "Carolene" and which also stated the contents of the can. The Court held that this was not a regulation of the sale of such products and did not come under any adulteration act for it prohibited all sales regardless of the fact that the oils added were harmless or not. The Court also found that there was no evidence of fraud, that the public relied on the label in purchasing products sold in tins. In the opinion the Court said:

"The power of the legislature to regulate the production and sale of milk and its derivatives cannot be doubted. But the police power of regulation does not include the absolute prohibition of trade in useful and harmless articles of commerce. Being prohibitory, the act must be declared invalid.  * * *

"The primary determination of public need and character of remedy in the exercise of the police power is in the legislature. Unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution, the act must be sustained. The presumption favors validity and, if the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted. *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204 (53 A. L. R. 273); *Price* v. *Illinois,* 238 U. S. 446, 451 (35 Sup. Ct. 892, 59 L. Ed. 1400)."

The *Carolene Case* on its facts can be readily distinguished from the present case, and the language quoted from that opinion applied to the facts here requires a different result in this case. It is true that here, as there, the statute does prohibit the sale of a harmless and nutritious article of food, though of lower quality and used as a cheaper substitute. But the right to engage in any business is qualified in that it is subject to a proper exercise of the police powers of the State. In the *Carolene Case* there was an absolute prohibition as to the sale of such products. The primary purpose of section 5 (t), *supra,* is to fix a standard for chocolate milk irrespective of the name it might be called, and only prohibits sale of products that do not comply with the standard. The act does not prohibit the sale of chocolate milk or any other chocolate drink. It regulates and all plaintiffs have to do is to comply with the standard to sell chocolate drinks. The Court is not concerned with the fact that it will cost the dairy more to produce a chocolate milk containing 3 per cent. butterfat than one with less butterfat. It is the same as the standards set for sale of milk which have long been upheld.

Also in the *Carolene Case* the Court held there was no evidence of public fraud in that the containers were distinctly labelled and no more conducive to fraud than any other canned goods. Here the record shows clear evidence of very great probability of fraud. The containers are the same as those used for milk and chocolate milk which complies with the minimum standards set by statute. Merely putting a label on the bottle cap used on the usual containers of the dairy is not sufficient. The general public frequently does not stop to distinguish between chocolate milk and chocolate drink, and this is particularly true where it is sold in school lunchrooms to children, who cannot be expected to

inquire as to the difference in butterfat content in the two bottles that appear alike and are sold as milk products by the dairies. Small children may not even be able to read the cap or label. There is at least sufficient showing of danger of fraud to the public to warrant the legislative action.

An act will always be upheld unless it plainly appears to be in violation of the constitutional principles. Where there is no reasonable grounds for the legislature or municipality to act, the Court has held in certain cases regulations of business and employees are unreasonable and not a proper exercise of the police power. However, when there is a basis for such statutes or ordinances, and we find such basis in the instant case, the acts have been upheld. In *People* v. *Worden Grocer Co.*, 118 Mich. 604, the Court held, quoting from *Commonwealth* v. *Evans*, 132 Mass. 11:

"The intention of the legislature and the practical operation of this section, in connection with the third section, is to provide that it shall be unlawful to sell milk containing less than 13 per centum of milk solids. This belongs to the class of police regulations designed to prevent frauds and to protect the health of the people, which it is within the constitutional power of the legislature to enact."·

The legislature undoubtedly considered the necessity for vitamin "A" in the daily diet, and the fact it is generally derived from milk. It also foresaw the possibilities of fraud to the public. The legislature has the power to enact laws to prevent this fraud. There being a reasonable basis for the statute, it must be held a valid exercise of the police powers. The court may not substitute its judgment for that of the legislature as to the method of preventing such fraud. It is sufficient that there is a reasonable basis for the legislative action.

For this reason the decree of the lower court must be reversed and one may be entered in this Court dismissing the bill. A public question being involved, no costs will be allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.