PEOPLE v. BREEN.

1. COMMERCE—FEDERAL STATUTES—STATE STATUTES.
   The exercise by the State of its police power, which would be valid if not superseded by Federal action in the regulation of interstate commerce, is superseded only where the repugnance or conflict is so direct and positive that the two acts cannot be reconciled nor consistently stand together.

2. SAME—FEDERAL STATUTES—STATE STATUTES—SUBJECT MATTER—INTENT TO SUPERSEDE.
   To have the effect of superseding a State statute, it is not sufficient that a congressional regulation of commerce invades the same field; it must expressly cover the precise subject matter, or show a purpose to take legislative possession of the whole field, or at least a purpose to legislate on the particular subject, or an intention to supersede or exclude State action; and this purpose must be manifested by a valid statute.

3. SAME—EXCLUSIVE FEDERAL REGULATION.
   Exclusive Federal regulation may arise from the exercise of the power of congress over interstate commerce where in the absence of congressional action the States may themselves legislate.

4. SAME—REGULATION BY EITHER FEDERAL OR STATE GOVERNMENT.
   In those fields of commerce where national uniformity is not essential, either the State or Federal government may act.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Constitutional Law, §§ 245, 255, 257.
[1–11, 15] 11 Am Jur, Commerce, §§ 24, 94; 11 Am Jur, Constitutional Law, § 265.
[7, 11, 15] 22 Am Jur, Food, §§ 16, 17, 53.
[7, 11, 15] Constitutionality of statute in relation to oleomargarine or other substitute for butter. 53 ALR 474.
[8, 10–12, 15] 11 Am Jur, Constitutional Law, § 284 et seq.
[9] 11 Am Jur, Constitutional Law, §§ 259, 262.
[10, 11, 15] 22 Am Jur, Food, § 8 et seq.
[13] 11 Am Jur, Constitutional Law, § 251.
[14] 14 Am Jur, Courts, § 202.

5. SAME—PARTIAL REGULATION BY FEDERAL GOVERNMENT.

Where the Federal government has only partially exercised its power of regulation of interstate commerce, a State may legislate freely upon those phases of the commerce which are left unregulated by the nation.

6. SAME—FEDERAL INTENT TO THWART STATE ACTION MUST BE CLEAR.

When the prohibition of State action in the matter of interstate commerce is not specific but inferable from the scope and purpose of the Federal legislation, it must be clear that the Federal provisions are inconsistent with those of the State to justify thwarting of State regulation.

7. FOOD—OLEOMARGARINE—COLORATION—FEDERAL STATUTE AND REGULATION—STATE STATUTES.

Where Federal regulation, promulgated pursuant to a Federal statute, does not require a coloring ingredient in oleomargarine but makes such an ingredient optional, the Federal regulation only partially pre-empts the field and there would be no conflict between Federal regulation permitting importation into State of oleomargarine without artificial coloring and State statute prohibiting the sale of colored oleomargarine (52 Stat 1046; 6 FR 2762; CL 1948, § 288.241).

8. CONSTITUTIONAL LAW—RIGHT TO ENGAGE IN BUSINESS—POLICE POWER.

The Constitution guarantees to citizens the general right to engage in any business which does not harm the public, but such right is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud.

9. SAME—POLICE POWER—GENERAL WELFARE—RELATION BETWEEN REMEDY AND PUBLIC PURPOSE.

In the exercise of the police power there must be not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose.

10. SAME—PROHIBITION OF NUTRITIOUS FOOD PRODUCT—POLICE POWER.

Prohibition of manufacture and sale of a nutritious food product which is harmless to public health cannot be justified under the police power to preserve public health, because the remedy has no reasonable relation to the purpose unless, at least, it appears that other similar products, dangerous to health, are on the market and that prohibition of all is reasonably neces-

sary to protect the public health because of the impracticability of separating the good from the bad.

11. FOOD—STATUTES—REGULATION OF OLEOMARGARINE—COLORATION —POLICE POWER.

State statute, permitting sale of oleomargarine free from coloration or ingredient that causes it to look like butter but barring sale of oleomargarine when so colored as to resemble butter, is a regulatory act *held,* to bear a reasonable relationship to the police power.

12. CONSTITUTIONAL LAW—POLICE POWER.

The reasonableness of a police regulation of any business depends chiefly on the circumstances on which the regulation operates and no police regulation should be allowed to interfere with the enjoyment of individual rights beyond the necessities of the case.

13. SAME—POLICE POWER.

The measure of police power must square with the measure of public necessity and the public need is the polestar for the enactment, interpretation, and application of the law.

14. SAME—COURTS—LEGISLATURE.

Courts interfere with the discretion of the legislature in legislative matters only where the regulations adopted are arbitrary, oppressive or unreasonable.

15. FOOD—OLEOMARGARINE—BUTTER—FRAUD—CONSTITUTIONAL LAW.

Act to prevent deception in the manufacture and sale of imitation butter which permitted the sale of uncolored oleomargarine but barred its sale when colored so as to resemble butter undertook to achieve its purpose by the most effective means and was constitutional, since it was within the power of the legislature to enact, its wisdom or policy not being for the Supreme Court to determine even some 49 years later (PA 1901, No 22).

Appeal from Oakland; Doty (Frank L.), J. Submitted October 14, 1949. (Docket No. 79, Calendar No. 44,214.) Decided January 9, 1950.

Donald Breen was convicted of selling yellow oleomargarine. Affirmed.

*Estes & Cooney* (*Smith & Huffaker* and *Carroll C. Grigsby,* of counsel), for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Clyde D. Underwood,* Prosecuting Attorney, and *Frederick C. Ziem,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. Defendant was charged, tried and convicted of a violation of PA 1901, No 22, § 1 (CL 1948, § 288.241 [Stat Ann § 12.731]), section 1 of which provides:

"No person, by himself or his agents, or servants, shall render or manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell, any article, product or compound made wholly or in part out of any fat, oil or oleaginous substance or compound thereof, not produced from unadulterated milk or cream from the same, which shall be in imitation of yellow butter produced from pure unadulterated milk or cream of the same: *Provided,* That nothing in this act shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter."

The facts in this case necessary to decision are undisputed. On February 27, 1948, an employee of the State department of agriculture, division of bureau of foods and standards, entered defendant's store and purchased of defendant a package of "Keyko" or "yellow oleomargarine," after having informed defendant that the sale of colored oleomargarine was prohibited by statute. The product was manufactured in Illinois and the package contained a substance which looked like yellow butter.

An employee of the department of agriculture testified that an analysis of the contents of the package sold by defendant showed that it was not produced of milk fat, but was oleomargarine with a yellow

coal tar dye added to make it look·like yellow butter.

Leave having been granted, defendant appeals and urges that the Federal government having enacted legislation upon the subject of oleomargarine, the exercise of congressional authority overrides all conflicting State legislation.

Section·401 of the Federal food, drug and cosmetic act of 1938, as amended (52 Stat 1046, 21 USCA § 341), provides in part as follows:

·· "Whenever in the judgment of the secretary (administrator) such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container.  *  *  * In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the secretary (administrator) shall, for the purpose of promoting honesty and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label."

By virtue of the authority contained in the above act the Federal Security Administrator promulgated an order on June 6, 1941, relative to the standard of identity of oleomargarine which includes as an optional ingredient, among others, "artificial coloring." (6 FR 2762)

The rule by which a Federal statute or a regulation of a Federal agency supersedes a State statute is stated in 15 CJS as follows:

"Indeed, the exercise by the State of its police power, which would be valid if not superseded by Federal action in the regulation of interstate commerce, is superseded only where the repugnance or

conflict is so direct and positive that the two acts cannot be reconciled nor consistently stand together." (p 275)

"To have the effect of superseding a State statute, it is not sufficient that a congressional regulation of commerce invades the same field; it must expressly cover the precise subject matter, or show a purpose to take legislative possession of the whole field, or at least a purpose to legislate on the particular subject, or an intention to supersede or exclude State action; and this purpose must be manifested by a valid statute." (p 274)

In *Cloverleaf Butter Co.* v. *Patterson,* 315 US 148 (62 S Ct 491, 86 L ed 754), the rule is stated:

"This power of congress to exercise exclusive control over operations in interstate commerce is not in dispute here. Nor is this power limited to situations where national uniformity is so essential that lacking congressional permission all State action is inadmissible notwithstanding a complete absence of Federal legislation. Exclusive Federal regulation may arise, also, from the exercise of the power of congress over interstate commerce where in the absence of congressional action the States may themselves legislate. It has long been recognized that in those fields of commerce where national uniformity is not essential, either the State or Federal government may act. *Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet (27 US) 245 (7 L ed 412); *California* v. *Thompson,* 313 US 109, 114 (61 S Ct 930, 85 L ed 1219). Where this power to legislate exists, it often happens that there is only a partial exercise of that power by the Federal government. In such cases the State may legislate freely upon those phases of the commerce which are left unregulated by the nation. But where the United States exercises its power of legislation so as to conflict with a regulation of the State, either specifically or by implication, the State legislation becomes inoperative and the Federal legislation exclusive in its application.

"When the prohibition of State action is not specific but inferable from the scope and purpose of the Federal legislation, it must be clear that the Federal provisions are inconsistent with those of the State to justify the thwarting of State regulation."

It is to be noted that the Federal standard does not require a coloring ingredient, it makes such ingredient optional. Under the Federal standard oleomargarine without artificial coloring can be imported into Michigan. By making coloring matter optional the Federal regulation has only partially pre-empted the field. It follows that there is no conflict between the Federal regulation and the Michigan statute prohibiting the sale of colored oleomargarine.

It is also urged that the Michigan statute (PA 1901, No 2) no longer bears any reasonable relationship to any recognized police power purpose. It is urged that modern margarine is made from vegetable oils; contains vitamin E, not found in natural butter; possesses greater resistance to rancidity than butter; and is actually superior to butter from a nutritional point of view. Defendant relies upon *Carolene Products Co.* v. *Thomson,* 276 Mich 172, in support of his theory. In that case a statute prohibiting the sale of filled milk as natural milk was held unconstitutional. We there said:

"The principles involved are well settled and do not need extensive citation of authorities. The Constitution guarantees to citizens the general right to engage in any business which does not harm the public. *People, ex rel. Valentine,* v. *Berrien Circuit Judge,* 124 Mich 664 (50 LRA 493, 83 Am St Rep 352). The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud. In the exercise of the police power there must be not only a public welfare

to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose. 12 CJ, p 929. * * *

"Prohibition of manufacture and sale of a nutritious food product which is harmless to public health cannot be justified under the police power to preserve public health, because the remedy has no reasonable relation to the purpose unless, at least, it appears that other similar products, dangerous to health, are on the market and that prohibition of all is reasonably necessary to protect the public health because of the impracticability of separating the good from the bad."

It should be noted that following the decision in the above case, we had under consideration *Thayer* v. *Department of Agriculture,* 323 Mich 403, in which the issue was whether a statute regulating the production and sale of milk containing chocolate was a proper exercise of the police power. We there said (p 412):

"The act does not prohibit the sale of chocolate milk or any other chocolate drink. It regulates and all plaintiffs have to do is to comply with the standard to sell chocolate drinks."

In the case at bar the act in question does not prohibit the sale of oleomargarine. It merely regulates it. Much that defendant says about the merits of modern margarine should be addressed to the legislature. Where legislation is within the scope of police power, its wisdom and propriety are for legislative and not judicial determination. We are constrained to hold that the act in question bears a reasonable relationship to the police power.

It is also urged that the constitutionality of a statute predicated on certain facts may be challenged by showing that such facts have ceased to exist. Defendant cites *Flynn* v. *Horst,* 356 Pa 20, 31 (51 A2d

54), where it was held that parts of a statute imposing excessive license fees on margarine dealers was an abuse of the police power and invalid. It was there said:

"When a factual situation continues for 15 years which reveals that an ostensible police regulation is not a police regulation but in practical operation a device to hamper or destroy a legitimate business, it becomes the duty of the judiciary to declare the act's true character and to decree that it is inoperative, even if the statute when it was first enacted was *in the situation then existing* a justifiable police regulation. When it ceased for a substantial period of time to be such a regulation it lost its aegis of constitutionality.

"The reasonableness of a 'police regulation' of any business depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to 'interfere with the enjoyment of individual rights beyond the necessities of the case.' *California Reduction Co.* v. *Sanitary Reduction Works,* 199 US 306, 318 (26 S Ct 100, 103, 50 L ed 204). 'The measure of police power must square with the measure of public necessity. The public need is the polestar for the enactment, interpretation, and application of the law,' per Wanamaker, J., in *Leonard* v. *State,* 100 Ohio St 456 (127 NE 464)."

It should be noted that the Pennsylvania court also stated: "The courts interfere with the discretion of the legislature in such matters only 'where the regulations adopted are arbitrary, oppressive or unreasonable.' 2 Cooley's Constitutional Limitations (8th ed), p 1228."

The act in question was enacted in 1901 and its title reads: "An act to prevent deception in the manufacture and sale of imitation butter." The act has been held constitutional in *People* v. *Rotter,* 131

Mich 250, *People* v. *Phillips,* 131 Mich 395, and again construed in *Bennett* v. *Carr,* 134 Mich 243.

In *People* v. *Rotter, supra,* we said:

"A fair inference from this statute is that the legislature undertook to prevent deception by preventing the sale of any yellow oleomargarine, and it undertook to accomplish this by the most effective means, *viz.,* by prohibiting the coloring of oleomargarine yellow, thereby avoiding the embarrassment which would otherwise arise from the necessity of proving in each case that deceit was used in selling it as and for butter.     *     *     *

"We are of the opinion that the legislature had the power to pass this law, and its wisdom or policy is not for our consideration."

In our opinion the statute is constitutional and the conviction is affirmed.

Boyles, C. J., and Reid, North, Dethmers, Butzel, and Carr, JJ., concurred with Sharpe, J. Bushnell, J., concurred in the result.