**PEPPERIDGE FARM, INC., et, Plaintiffs, v. FOUST et, Defendants.**

Common Pleas Court, Franklin County.

No. 187005. Decided September 24, 1953.

Adams, Tyler & McCann, Columbus, for plaintiffs.

C. William O'Neill, Atty. Genl., Kiehner Johnson, Asst. Atty. Genl., Columbus, for defendant.

## OPINION

By BARTLETT, J.

This is an action to enjoin the State Director of Agriculture from interfering with the sale of plaintiff's "Brown and Serve

French Rolls." The plaintiff, a Connecticut corporation, owns and operates a bakery, and merchandises its products in 44 states including Ohio. The company sells its merchandise to retailers by independent distributors who own exclusive franchises for the wholesale distribution of such products in certain territories; such products are shipped via Railway Express from Norwalk, Connecticut, one of the products is known as "Brown and Serve French Enriched Rolls" which weigh 5 ounces each and are sold in packages containing two rolls each.

Sec. 1090-37 GC, prohibits the sale of units of bread weighing less than 16 ounces, and the Director of Agriculture has determined that the product in question is within the prohibition of this section. The section expressly exempted rolls from this unit weight, and the company claims their product comes within this exception. The Director has set the maximum weight of such rolls at 3 ounces.

Sec. 1090-38 GC, which provides in part as follows:

"The director of agriculture shall prescribe such rules and regulations as may be necessary to enforce the preceding section * * *." (Emphasis ours.)

Sec. 1172-12 GC, provides in substance for the adoption of standards for foods which shall conform to the standards for foods adopted by the U. S. Department, and the Secretary of Agriculture (now director) shall make such rules and regulations as may be necessary for the enforcement of the food, drug, dairy and sanitary laws of this state, which shall, where applicable, conform to those adopted from time to time for the enforcement of "the food and drug act of congress approved June 30, 1906 and amended March 3, 1913." (Emphasis ours.)

. Pursuant to the mandate of Sections 341 and 371 (d) of the federal food and drug act (21 re SCA), the Federal Security Administrator on May 12, 1952 promulgated definitions and standards of identity for bread and rolls. (Federal Register, Vol. 17, No. 96, pp. 4463-4) which define and identify bread as baked in units which weight $\frac{1}{2}$ pound or more after cooling, and rolls as baked in units which weigh less than $\frac{1}{2}$ pound after cooling.

The defendant company insists the term "rolls," as exempted from the unit weight required in §1090-37 GC, supra, has no universally accepted meaning; and, therefore, it becomes necessary for the defendant Director to adopt some rule or standard as to what is or is not a roll under the statute. The company concedes the record is clear that for the purpose of enforcement of said §1090-37 GC, the Director actually has

adopted a rule that 3 ounces is the maximum weight of a roll, and is using that standard for enforcing the statute; but complains the Director has promulgated no such rule formally and in writing as required by law to conform to such federal rules.

The question of the constitutionality of §1090-37 GC, supra, cannot be now seriously raised, as to its requirement that bread shall be sold "only in units of not less than sixteen ounces," notwithstanding the Federal administrator's rule that identifies bread as baked in units of ½ pound or more, supra.

"1. Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community.

"2. A city ordinance, fixing standard sizes of bread loaves and prescribing loaves of one pound avoirdupois as the minimum weight that may be manufactured and sold by a baker, is not an unreasonable or arbitrary exercise of police power and is constitutionally valid." **Allion v. The City of Toledo, 99 Oh St 416.**

"The making and selling of bread, particularly in large cities, is obviously a trade subject to police regulation.

"Local legislative authorities, and not the courts, are primarily the judges of the necessities of local situations calling for police regulation, and the courts can only interfere when such regulation arbitrarily exceeds a reasonable exercise of authority.

"The fact that laws prescribing standard sizes of loaves of bread and prohibiting the sale of other sizes have been sustained by the courts of several States shows the necessity for police regulation of the subject.

"Mere inconvenience to merchants conducting a business subject to police regulation does not vitiate the exercise of the power.

"The ordinance of Chicago of 1908 enacted under legislative authority, fixing standard sizes of bread loaves and prohibiting the sale of other sizes, is not unconstitutional as depriving those dealing therein of their property without due process of law or as denying them equal protection of the law or as interfering with their liberty of contract." Schmidinger v. City of Chicago, 226 U. S. 578.

"3. FOOD.

"Adoption by statute of standard one-pound loaf as minimum unit in which bread may be manufactured and sold **held** not unreasonable exercise of state's police power (Const. Amend. 14; §§1090-37, 1090-38 GC).

"4. CONSTITUTIONAL LAW.

"Court is not concerned with wisdom of legislation in passing on its constitutionality." Wonder Bakeries Co. v. White, 3 F. Supp. 311.

This case involved the constitutionality of §§1090-37 and 38 GC.

It is true that §§1090-38 and 1172-12 GC both required the director of the agriculture department to prescribe such rules and regulations, **as may be necessary and where applicable,** to enforce such sections and to conform to those adopted from time to time by the Federal Security Administrator for the enforcement of the federal food and drug act. (Emphasis ours.)

Counsel for the plaintiff insist that it is mandatory that such rules be adopted to determine the identity of the term "rolls" as used in §1090-37 GC, supra, and counsel for the defendant urge that no such rule is necessary for that purpose, since the term "roll" has a common meaning as to its basic features in the baking industry by custom and usage of the trade, such as that a roll constitutes an individual serving, weighing not to exceed three ounces and sold in multiples of a dozen; while the product in question weighs one and one-half to twice as heavy as that which is usually considered to be a roll, and is what is generally called bread, being made of bread type dough.

"The court may not substitute its judgment for that of the agency but is confined to determining the rights of the parties in accordance with the * * * law applicable." **Farrand v. State Medical Board of the State of Ohio, 151 Oh St 222.**

Turner, J., in delivering the opinion of the court in the foregoing case, at p. 224 says:

"The purpose of the General Assembly * * * was to facilitate such matters by **placing the decision on facts** with boards or commissions composed of **men equipped with the necessary knowledge and experience pertaining to a particular field.**"

It would seem certain, therefore, that the general assembly lodged the decision as to necessity of such rules in the first instance in the discretion of the Director of the Department, and that he and his staff are presumed to be men with the necessary knowledge and experience in that field.

It is difficult to conceive that §1172-12 GC, supra, is controlling in the enforcement of §1090-37 GC, supra, since the latter section came into existence many years after the previous section and makes no reference to such prior law.

It should be noted that in §1090-37 GC, supra, the exception to the general prohibition expressly required the director to

define "fancy bread" but contains no such express requirement as to rolls; which would indicate the general assembly presumed "rolls" had an accepted meaning in the trade but that "fancy bread" did not.

"Technical words or phrases in a statute are presumed to have been used by the legislature in a technical sense, and they are generally so construed where there is nothing in the statute to indicate that they were employed in another sense.

"* * * where technical words, or terms of art, are used in a statute, the evidence of people engaged in the profession, trade or occupation to which they pertain may be admitted to explain their meaning." **37 O. Jur., p. 576;** Order of Ry. Conductors, etc. v. Swan, 329 U. S. 520; **Cambridge Glass Co. v. Evatt, 19 O. O. 162;** and Hosack's Sutherland Statutory Construction, 3rd Ed. Vol. 2, Sec. 4919.

If the Director of the Department of Agriculture should promulgate rules and regulations fully in accord with the demands of the plaintiff company, to conform with the federal regulations as to bread, such rules and regulations would vitiate §1090-37 GC, supra, since the federal regulations define bread in units of ½ pound or more, and the Ohio Code requires a weight unit of not less than one pound. In the light of the decisions heretofore cited, surely counsel for plaintiff can not claim the Ohio statute unconstitutional because in conflict with a later regulation promulgated at a later date. If this statute was reasonable and constitutional at the time of these decisions, its validity cannot be challenged because of later rules and regulations. Would counsel for plaintiff claim that their client has the right to sell bread in Ohio in units of one-half pound but less than one pound because the Ohio law must conform with the federal regulation. We have not reached the place in our jurisprudence where the rules and regulations of a department, either federal or state, may determine the constitutionality or reasonableness of a statute. Section 154-63 of the Ohio Administrative Procedure Act, cited by counsel for plaintiff, expressly provides:

"* * * no agency shall adopt any rule which is inconsistent with * * * any law of this state."

The Court is of the opinion that there has been no showing in this case of an abuse of discretion by the Director of the Department of Agriculture in failing to prescribe rules and regulations to enforce §1090-37 GC, supra, since the record does not establish the necessity thereof, and more particularly this is true, as to plaintiffs' product in question, for the term "rolls" as used in the statute is sufficiently identified in the baking industry as to its basic features, by the custom and usage of that trade.

It is claimed that the stopping of the sale of the product in question is an interference with Interstate Commerce.

"Although the commerce clause conferred on the national government power to regulate commerce, its possession of the power does not exclude all state power of regulation. Ever since Willson v. Black-Bird Creek March Co., 2 Pet. 245, and Cooley v. Board of Wardens, 12 How. 299, it has been recognized that in the absence of conflicting legislation by congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even to some extent, regulate it. (Cases cited.) Thus the states may regulate matters which, because of their number and diversity, may never be adequately dealt with by Congress. (Cases cited.) When the regulation of matters of local concern is local in character and effect, and its impact on the national commerce does not seriously interfere with its operation, and the consequent incentive to deal with them nationally is slight, such regulation has been generally held to be within state authority. (Cases cited.)"

Justice Stone in Southern Pacific Co. v. Arizona, 325 U. S. 761.

"It has long been recognized that in these fields of commerce where national uniformity is not essential, either the state or federal government may act. * * * When this power to legislate exists, it often happens that there is only partial exercise of that power by the federal government. In such cases the state may legislate freely upon those phases of the commerce which are left unregulated by the nation. * * *

"Where the prohibition of state action is not specific but inferable from the scope and purpose of the federal legislation, it must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of the state regulation."

Justice Reed in Cloverleaf Co. v. Patterson, 315 U. S. 148. 155.

The purpose of the Federal Food and Drug Act is to keep misbranded and adulterated articles out of the channels of interstate commerce; while §1090-37 GC is designed to prevent fraudulent underweight retail sales of bread.

"The making and selling of bread, particularly in a large city where thousands of people depend upon their supply of this necessity of life by purchases from bakers, is obviously one of the trades and callings which may be the subject of police regulation." * * *

"This court has frequently affirmed that the local authorities entrusted with the regulation of such matters and not the courts are primarily the judges of the necessities of local situations calling for such legislation, * * *"

"Furthermore, laws and ordinances of the character of the one here under consideration (fixing the standard size of loaves of bread and prohibiting the sale of other sizes) and tending to prevent frauds and requiring honest weights and measures in the sale of articles of general consumption, have long been considered lawful exertions of the police power. McLean v. Arkansas, supra, 550 (211 U. S. 539); Freunds on Police Power, Sections 274, 275."

Mr. Justice Day, pages 587 and 588, Schmidinger v. Chicago, supra.

Laws such as §1090-37 GC, fixing the standard size of loaves of bread and prohibiting the sale of other sizes, to prevent frauds and requiring honest weights in an article of such general consumption as bread, having long been considered as lawful exertions of the police power of the state, by the Supreme Court of the United States, because the matter is of local concern and effect, it would seem safe to assume that under the decisions of that august body, if the impact of such state legislation on the national commerce does not seriously interfere with its operation, such regulation would be held within the state authority, and in any event it must be clear that certain federal legislation is inconsistent with those of the state to justify the thwarting of the state regulation, since there is no specific or express prohibition of such state action.

"Where an act of Congress relating to a subject on which the state may act also, limits its prohibitions, it leaves the subject open to state regulation as to the prohibitions which are unenumerated."

Savage v. Jones, 225 U. S. 501;

"Although the Food and Drug Act prohibits misbranding, it does not require publication of ingredients, and in that respect the field is left open for state legislation."

Savage case, supra.

If the state may supplement the prohibition of misbranding contained in the Federal Food and Drugs Act, by requiring publication of the ingredients, then it stands to reason that the state may also supplement such federal act, by legislation to prohibit the sale of bread under a certain weight unit to prevent frauds and require honest weights in the sale of such food product.

"The net weight lard statute of North Dakota is directed to the manner of selling lard at retail and is not repugnant to the Food and Drugs Act of June 30, 1906, * * * which is directed against adulteration and misbranding of articles of food transported in interstate commerce."

Armour and Co. v. North Dakota, 240 U. S. 510.

Again the state regulation is held valid where it merely supplements the federal law, by requiring the containers to hold a specified number of pounds net weight of lard or even multiples thereof and label as specified.

"State laws forbidding sale of food articles containing benzoate of soda are not inconsistent with the commerce clause or the purpose of the Federal Food and Drugs Act, although the preservative, as used, is allowed by the federal act and regulations and the containers are labeled in conformity therewith."

Weigle v. Curtice Brothers Co., 248 U. S. 285.

Justice Holmes on p. 288 of his opinion in this case observes:

"The fact that a food or drug might be condemned by Congress if it passed from state to state, does not carry an immunity of foods or drugs, making the same passage, that it does not condemn. ¹ * * * The Food and Drugs Act does not interfere with state regulations at retail."

"A state statute making the manufacture or sale of yellow oleomargarine an offense is not invalid on the ground that the federal government had exercised exclusive control over the matter because the Federal Security Administrator had promulgated under the Federal Food, Drug, and Cosmetic Act an order including as an optional ingredient of oleomargarine artificial coloring."

People v. Breen, 40 N. E. 2d, 778, 326 Mich. 720.

"Where there has been only a partial exercise by the federal government over power to regulate interstate commerce, state may legislate freely on those phases of commerce which are left unregulated by a federal government, * * *."

Breen case, supra.

Sharpe, J., in this case says:

"By making coloring matter optional the Federal regulation has only partially preempted the field. It follows that there is no conflict between the Federal regulation and the Michigan statute prohibiting the sale of colored oleomargine."

Counsel for plaintiffs plant the right of the bread company to disregard the Director's instruction that the product in question shall not be sold as a "roll" if it exceeds 3 ounces in weight, upon the fact that the Federal Security Administrator has identified "rolls as baked in units, each of which weighs less than one-half pound after cooling." From this it is argued that to comply with the Director's order, the bread company would be required to violate the federal regulation as to "misbranded food," and consequently the Director's order as to "rolls" constitutes an interference with interstate commerce. The Federal Administrator does not require that "rolls"

weigh one-half pound; this is merely permissive, and the state in the interest of honest weight may require that rolls weigh not to exceed three ounces which does not conflict with the federal regulation that they may weigh more. If they comply with the Director's order of not to exceed three ounces and are branded as "rolls," there is no violation of the federal "misbranding act."

It is also argued upon behalf of the bread company that the product having been identified by the federal government, that such identity is for all purposes; and that the state cannot affix an entirely different identity for purposes of sale within the state. Again, it must be pointed out that the Security Administrator has only made it permissive that "rolls" may weigh not to exceed one-half pound, and has not created a right to weigh that amount. The state may require that such rolls weigh less in the interest of honest weight.

The Security Administrator's permissive rule does not make rolls immune to a state regulation that they weigh less. In other words, if the plaintiff company respects the Director's order that "rolls" sold at retail shall weigh not to exceed three ounces, there will be no occasion to violate the federal law on misbranding.

Finally, it was argued by counsel for the plaintiff bread company that the three ounce maximum weight for rolls is unreasonable and arbitrary, and hence repugnant to the constitutions both of Ohio and the United States.

This argument loses most of its force when we consider that the present legislation in Ohio has been successfully administered for many years, and that the baking industry has understood and accepted by usage and custom the definition of rolls as applied by the Director and his staff. This standard of not to exceed three ounces in weight for a roll became unreasonable and arbitrary, only when a foreign corporation, admittedly, undertook to introduce in Ohio a novelty in the way of bread by creating a miniature loaf of bread, and calling it a "roll" in utter disregard of its abnormal weight as such.

"3. A statute of Nebraska prescribes the minimum weights of loaves of bread to be made, or offered, for sale in the State, and, in order to prevent the palming off of smaller for larger sizes, fixes a maximum for each class, by allowing a 'tolerance' of only two ounces per pound in excess of the minimum, the weights to be determined by averaging loaves of each class in lots of twenty-five, and to apply for twenty-four hours after baking. The evidence demonstrated that owing to normal evaporation from bread under conditions of tempera-

ture and humidity often prevailing in Nebraska, it is impossible to manufacture good bread in the regular way without frequently exceeding the prescribed tolerance and incurring the burden of penalties prescribed by the statute, and that compliance would necessitate selection of ingredients making an inferior and unsalable bread, or wrapping the loaves, although wrapping is not required by the statute and unwrapped loaves are wholesome food in much demand by consumers. Held, That, in the circumstances, the provision that average weights shall not exceed these maxima is not necessary to protect purchasers against imposition and fraud by short weights, and not calculated to effectuate that purpose; and that it subjects bakers and sellers of bread to restrictions essentially unreasonable and arbitrary; and is therefore repugnant to the Fourteenth Amendment."

3rd Syl. Burns Baking Co. v. Bryan, 264 U. S. 504.

In the case of Holsum Baking Co. v. Green, Director, etc. 45 F. (2d) 233, the provision of §1090-37 GC, at that time fixing the maximum weight of loaves of bread was held invalid on the authority of the Burns case, supra.

Counsel for plaintiff company urge that since the Burns case and the Holsum Baking Company case, supra, both hold that a provision for a minimum weight of a loaf of bread was in the public interest, but that such a provision for a maximum weight served no public interest, since it is short weight that the public needs protection against, not overweight; that, therefore, the statute imposing such a maximum weight is invalid and unconstitutional, since it imposes unnecessary, arbitrary and unreasonable requirements on the baking industry; and, consequently the imposition of a maximum state regulation on the weight of "rolls" in an effort to enforce the Ohio Statute regulating the weight of bread, is unreasonable and arbitrary, and hence invalid and unconstitutional.

The fallacy of the reasoning in this instance lies in the fact that the chief concern of the Director and his staff lies in preserving and enforcing that part of the statute prescribing the minimum weight of a loaf of bread offered for retail sale, and their concern as to the maximum weight of a roll, lies solely in the threat of the plaintiff to defeat and destroy the minimum weight requirement for a loaf of bread, by creating a miniature loaf of bread, and calling it a roll, notwithstanding its abnormal weight as such. In other words, the prohibition of the statute is that a loaf of bread for retail sale shall weigh not less than sixteen ounces, but that such weight shall not apply to rolls. The rule establishes the minimum weight of a loaf of bread for retail sale, with a saving

exception for rolls. Must the Director and his staff stand idly by and see the protection afforded the public by this statute dissipated and destroyed by an abuse of the exception created in favor of rolls, in an utter disregard of what the term rolls has always meant in the baking industry? Shall the exception recognized by the statute be permitted to destroy the principle established by the statute itself? The more sensible rule of construction would be that if the effect of the devise resorted to by plaintiff is such as to deprive the public of its protection under the statute as to the fraud of short weights in bread, under the guise of being an exception thereto, then such device must be treated as illegal and in violation of the principle of the statute.

Constitutional protection having been invoked, it is the duty of the court to determine whether the challenged regulation or order of the Director of Agriculture, has reasonable relation to the protection of the purchasers of bread against fraud by short weights and really tends to accomplish the purpose for which it was created. Burns Baking Co. v. Bryan, supra. The provision as to the minimum weight of a loaf of bread is manifestly considered as a proper exercise of the state's police powers, since it is in the public interest as a safeguard against imposition, and, moreover, observance of it entails no substantial embarrassment to the baker. Holsum Baking Co. v. Green, supra.

This Court is of the opinion that it is the duty of the court to guard and preserve the valid principle of such a statute by refusing to permit a capricious and unreasonable use of the exception therein, to destroy the public protection the legislation intended to afford.

A permanent injunction will be granted only when a party shows a clear legal right thereto. **Spangler v. City of Cleveland, 43 Oh St 526;** and a Court of Equity should not interfere when the right is doubtful. **Stewart v. Ry., 14 Ohio 353,** Malchus v. Grasselli Chemical Co., 5 N. P. 359. The extraordinary character of the remedy of injunction requires that it shall be exercised sparingly and cautiously. **21 O. Jur. p. 1007; Goodall v. Crofton, 33 Oh St 271.**

A broad restraint upon the discretionary powers of the executive department would not be justified in the light of the constitutional separation and independence of the power of the executive and judicial departments. It is plain that the judicial department of the government should not, even if it could, interfere with the executive department in the apprehension of law violators. **Lyon v. City of Cincinnati, 55 Oh Ap 458.** By the same token, a Court of Equity should not inter-

fere with the administrative agencies set up by the General Assembly for the regulation and control of the sale of food stuffs and the prevention of short weights in the sale thereof, unless a clear legal right thereto be shown, with no adequate remedy at law.

"Equity will not interfere with officers charged with the duty of enforcing penal statutes so long as they act reasonably and in good faith within the discretion conferred by their office. * * * Where a court of law can do as full justice to the parties and to the matters in dispute as can be done in equity, a Court of Equity will not stay proceedings at law."

**21 O. Jur. Injunction, Sec. 157, p. 1231; Troy Amusement Co. v. Atteneiler, et al., 137 Oh St 460.**

"If the law is invalid, or if the parties are not guilty of the violation of any law, they ordinarily have a clear and adequate remedy at law, either in an action for damages or by pleading its invalidity as a defense in a criminal proceeding."

**21 O. Jur. Injunctions, Sec. 158, p. 1233; Gustafson v. Cleveland, 8 Abs 200, petition in error dismissed, 122 Oh St 60; Gassman v. Kearns 7 N. P. (n. s.) 317, affirmed without opinion, 81 Oh St 496.**

Nor will an injunction issue to prevent officers from prosecuting one conducting a bakery in violation of statute. 12 N. P. (n. s.) 298.

"3. Even though property rights are threatened, courts of equity will not interfere to prevent criminal proceedings under a law or ordinance alleged to be void unless its invalidity is clearly demonstrated."

**Fisco v. East Cleveland, 59 Abs 385.**

McNamee, J., in delivering the opinion of the court in the foregoing case further says on p. 389:

"The same basic principles govern where the inter-position of equity is sought to restrain criminal proceedings under a valid ordinance upon the claim that the prosecuting officials have misconstrued its provisions. In such cases before equity will intervene it must be clearly shown that the prosecuting officials' interpretation of the law is clearly erroneous. All doubts will be resolved in favor of the correctness of the construction of the ordinance by the officials charged with its enforcement. Courts will not encroach upon the duties and prerogatives of other co-ordinate branches of the government."

As was so well said in the Wonder Bakeries Co. Case, supra, "the court is not concerned with wisdom of legislation in passing on its constitutionality," and the same may be said as to the regulations of departments for the enforcement of

such laws, yet this Court feels that it may not be amiss to say that during the consideration of the instant case, the Court has found from observation and reports that the product in question has met with wide public favor, even to the extent of the Court's own family; and while the requirements of the Director of Agriculture as to the size of rolls may be justified by usage and custom of the baking industry, yet, it must be remembered that the consuming public is not and should not be a slave to such usages and customs. If there is a public demand for plaintiff's product, it should be made available to the public in a legal manner. It may be that the Director and his staff should revaluate the problem involved here, and possibly revamp his requirements concerning the product in dispute. It may be that this could be accomplished by revising the department's definition of "fancy bread," without sacrificing the public protection afforded by the law against short weights in bread. Such are matters that lie within the discretion of the officers charged with the enforcement of the law.

The injunction will be denied. Entry accordingly with exceptions by counsel for plaintiff.